**CAMPBELL v. ROANOKE COCA–COLA BOTTLING WORKS, Inc.**

No. 6222.

United States Court of Appeals, Fourth Circuit.

Argued April 4, 1951.

Decided May 11, 1951.

C. Carter Lee, Rocky Mount, Va., for appellant.

W. A. Dickinson and George S. Shackelford, Jr., Roanoke, Va. (Hazlegrove, Shackelford & Carr, Roanoke, Va., on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Anna Campbell, in the United States District Court for the Western District of Virginia, instituted a civil action against Roanoke Coca-Cola Bottling Works, Incorporated, seeking damages for personal injuries sustained in a collision of motor vehicles which occurred at Rocky Mount, Virginia, on May 10, 1950.

The jury could not agree on a verdict. Thereupon, the District Judge dismissed the jury and granted defendant's motion for entry of judgment in its favor. Plaintiff has duly appealed to us.

■ We think the evidence discloses a case that requires submission of the essential issues to the jury. The District Judge, accordingly, committed error in entering judgment for the defendant. The case, must, therefore, be remanded to the District Court for a new trial.

Plaintiff was riding in an automobile, owned and operated by her husband, Dr. William Campbell, headed North on U. S. Highway No. 220, through Rocky Mount, near the foot of a hill and at a T-intersection. Dr. Campbell attempted to pass the defendant's truck on its left-hand side. The truck, which had been moving slowly, also heading North, attempted to make a right-angle left turn into Franklin Street. Plaintiff was injured in the ensuing collision between the truck and the automobile.

Dr. Campbell testified: "Well, we were coming down the hill into Rocky Mount— I didn't know the name of the place at the time—and when we got just to the turn of the road there, I saw this truck ahead of me a little piece, and he wasn't making very much progress. And I said to my wife I believe we'd pass him. The road was clear. There was no car coming or going. We had the whole road to ourselves; a beautiful afternoon. And so I gave my horn two blasts and I pulled out around him. I watched to see if there was any sign. I saw no—I saw no light, I saw no hand stretch out. I concluded that the way was clear and I started around him. And when I came to that place where the accident happened, I was about that far (indicating) ahead of his car; and just like a snap of your finger he shot right into my car and we were split right on that pole."

He further stated that (with the exception of the truck and his own automobile): "There wasn't a car on the road either way. We had the whole road to ourselves, the two of us." He also testified: "He (driver of defendant's truck) seemed to go faster after I went to pass him. He seemed to speed up."

Plaintiff confirmed her husband's testimony in all essential respects. She further testified:

"Q. Did you see the truck when it hit your husband's car? A. Yes, I did.

"Q. What part of your husband's car was struck? A. The front part, in front of the front wheels."

■ Testimony contradicting that of Dr. and Mrs. Campbell was given on behalf of defendant, particularly by Morris, driver of defendant's truck, and Desper, a bystander. Morris testified that before starting his left turn into Franklin Street, he signaled for such a turn by means of a light on the rear of the truck; that the Campbell car ran into the truck, and that he did not see the Campbell car "until he hit me." Questions of the credibility of witnesses are, of course, for the jury, not the court.

Virginia Code, § 46–233, provides: "Signals required on starting, stopping, or turning. Every driver who intends to start, stop, turn or partly turn from a direct line shall first see that such movement can be made in safety and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in §§ 46–234, 46–235 or 46–237, plainly visible to the driver of such other vehicle, of his intention to make such movement."

In Sink v. Masterson, 191 Va. 618, 61 S.E.2d 863, 867, Mr. Justice Eggleston criticized an instruction because it omitted: "the vital requirement of the statute that before undertaking to make the turn the operator 'shall first' use ordinary care under the circumstances 'to see that such movement can be made in safety'". He also stated: "In similar cases we have held that whether, under the particular circumstances, the driver of a car acted as a reasonably prudent person in trying to make a turn across the path of another vehicle is for the jury." See, also, Smith v. Clark, 187 Va. 181, 46 S.E.2d 21; Virginia Stage Lines v. Duff, 185 Va. 592, 39 S.E.2d 634; Temple v. Ellington, 177 Va. 134, 12 S.E.

2d 826; Southern Fruit Distributors v. Fulmer, 4 Cir., 107 F.2d 456; Atlantic Greyhound Corporation v. Lyon, 4 Cir., 107 F.2d 157; Cardell v. Tennessee Electric Power Co., 5 Cir., 79 F.2d 934.

■ We think, accordingly, there was sufficient evidence to take to the jury the question of whether the driver of the truck was guilty of negligence contributing to the collision which caused the injuries received by the plaintiff.

■ Defendant insists that Dr. Campbell was clearly guilty of negligence, particularly in violating Virginia Code §§ 46–209, 46–222, which forbid passing at highway intersections without permission of a "traffic light or police officer" and the driving to the left of solid double traffic lines. We need not pass directly on this question save in so far as we hold that the defendant was not entitled to a directed verdict on the ground that Dr. Campbell's negligence was the sole proximate cause of the accident. It is clear that under Virginia law the negligence of Dr. Campbell cannot be imputed to the plaintiff here. Southern Fruit Distributors v. Fulmer, 4 Cir., 107 F.2d 456, 458.

■ We next pass to the question whether the plaintiff was, as a matter of law, herself guilty of contributory negligence which would bar any recovery by her. We think not. This question was one for the determination of the jury.

Mrs. Campbell testified: "We went parallel with the truck a little ways. And he (Dr. Campbell) said the fellow (the truck driver) was going too slowly and he (Dr. Campbell) said 'I think I am going to pass that truck,' and I said 'all right.'" At another point she testified:

"Q. Mrs. Campbell, in you all's trips, did you make any effort to supervise your husband's driving? A. No, I'm not a back seat driver.

"Q. But you just noticed the situation and what was going on? A. No, but if he (Dr. Campbell) said he was going to pass the truck, I said 'all right' and that was the end of it.

"Q. He did not always ask your permission? A. Oh, no."

Dr. Campbell testified: "Well, it (the truck) was moving very slowly, it wasn't making any progress whatever. And I said to Mrs. Campbell, "We might as well pass, there is no obstruction. So I blew my horn with that intention."

"Q. And you say you said that to Mrs. Campbell before you started to pass? A. Yes, sir, she was perfectly satisfied I should. When she said she was satisfied, I thought it was a pretty safe thing to do because she is a good second driver."

And, at another point in his testimony, Dr. Campbell said: "I said to Mrs. Campbell, 'We might as well pass him (the truck driver). There's no car coming, there's no car going. The road is clear.'" Both Dr. and Mrs. Campbell stated that they looked ahead at the truck and saw no signal whatever, light or hand, given by the driver of the truck.

Mrs. Campbell was over seventy years old and had never driven an automobile. Dr. Campbell did not indicate to her just how, and under what precise circumstances, he intended to execute the passing maneuver; he merely indicated to her his intention to pass the truck and she replied: "All right." We think, under these facts, her mere passive assent did not constitute contributory negligence as a matter of law, but did constitute a question which should have been left to the decision of the jury. See, Steele v. Crocker, 191 Va. 873, 62 S.E.2d 850; Remine v. Whited, 180 Va. 1, 21 S.E.2d 743; Mize v. Gardner Motor Co., 166 Va. 415, 186 S.E. 108; Norfolk & Western Railway Co. v. Wellons' Administrator, 155 Va. 218, 154 S.E. 575.

We note that the motion of defendant's counsel for a directed verdict in its favor made no mention of plaintiff's contributory negligence. The motion was based "on the grounds that there is no evidence of any act of negligence on the part of the driver of defendant's truck, and that the entire evidence shows that the entire collision was brought about solely by the acts of negligence of the driver of the plaintiff's car, or the car in which plaintiff was riding."

■■ We think further that the plaintiff here was entitled, even if she be held

guilty of contributory negligence, to have her case submitted to the jury under the last clear chance doctrine. As we said, in Mason v. Brown, 4 Cir., 186 F.2d 555, 557: "* * * under the last clear chance doctrine, when a plaintiff has been and is negligent but is in a helpless condition immediately preceding the mishap and therefore unable to avoid it, plaintiff may nevertheless recover if the defendant saw or should have seen plaintiff in time to avoid the collision by the use of reasonable care. Anderson v. Payne, 189 Va. 712, 722, 54 S. E.2d 82, 87. Virginia has gone far in adopting the humanitarian approach to the doctrine of last clear chance, allowing recovery in spite of a plaintiff's continuing negligence, if the plaintiff is unable to save himself and if the defendant should discover, by the exercise of reasonable care, the plaintiff's plight in time to avoid the accident. Harris Motor Lines v. Green, 184 Va. 984, 37 S.E.2d 4, 171 A.L.R. 359; State of Maryland, for Use of Joynes v. Coard, 175 Va. 571, 9 S.E.2d 454. See §§ 479, 480, Restatement of the Law of Torts, Virginia Annotations, by Dean William T. Muse, T. C. Williams School of Law."

The judgment of the District Court is reversed and the case is remanded with instructions to grant plaintiff a new trial.

Reversed and remanded.

SOPER, Circuit Judge (concurring).

The only legal basis for submitting this case to the jury is the possibility that the truck may have had the last clear chance to avoid the collision. There is evidence that when, contrary to law and ordinary prudence, the doctor drove his car across a double white line on to the left side of the road and attempted to speed past the truck as it was slowly approaching a road intersection, and when he had gotten a little beyond the truck, it turned to the left and struck the automobile. On account of this evidence I concur in the conclusion that a jury question exists.

But there is no reasonable doubt that both the doctor and his wife were guilty of contributory negligence, and this issue does not present a jury question. It seems to be conceded that he was negligent and the record does not indicate that suit has been brought on his behalf, although both he and his automobile were hurt. Of course his negligence should not be imputed to his wife but she herself testified that she participated in the decision and agreed to the action, without which the accident would not have happened. She was thoroughly familiar with travel by automobile and had traversed the route which they were then following between Florida and Pennsylvania five or six times. She was, as her husband testified, "a good second driver" and when, seated beside him, her husband asked her advice as to whether they should pass the truck she consented. No stronger evidence of contributory negligence could be furnished.