Present:  All the Justices

ANTHONY MANUEL ALFONSO, ET AL.

v.  Record No. 981333   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                      April 16, 1999
DARLENE ROBINSON


             FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                     LeRoy F. Millette, Jr., Judge


     In this appeal of a judgment in favor of a plaintiff in a

negligence action, we consider whether the trial court erred in

instructing the jury on the issue of willful and wanton

negligence.

     On November 23, 1994, shortly before midnight, Anthony

Manuel Alfonso was operating a tractor-trailer owned by

Schneider Specialized Carriers, Inc.  He was proceeding in one

of three northbound lanes on Interstate Route 95 in Prince

William County on a "very dark" stretch of roadway.  The truck

stalled and, although Alfonso could not restart the engine, he

was able to steer the truck into the right-hand lane of the

highway near a rest area.

     About the same time, Darlene Robinson was operating a

passenger van at a speed of approximately 55-60 miles per hour

in the right-hand lane of the highway.  Her van collided with

the rear of Alfonso's trailer, and Robinson was seriously

injured in the accident.

Robinson filed a motion for judgment against Alfonso and Schneider Specialized Carriers, Inc. (collectively, Schneider), seeking damages for her injuries.  In her amended motion for judgment, she alleged that Alfonso negligently failed to perform certain statutory duties placed on the driver of a disabled motor vehicle.  In Count I, Robinson alleged that Alfonso negligently failed to activate the truck's flashing hazard lights and to use warning flares or reflective triangles as required by state and federal regulations.  In Count II, Robinson alleged that Alfonso's actions constituted willful and wanton negligence and exhibited a total disregard for the safety of the traveling public.  In its grounds of defense, Schneider alleged that Robinson was guilty of contributory negligence.

Prior to a jury trial, Schneider admitted that Alfonso was guilty of simple negligence in failing to place reflective triangles behind the disabled truck.  At trial, Robinson and Michelle Annette Andrus, who was driving directly behind Robinson's van prior to the collision, testified that no flares or reflective triangles had been placed in the roadway behind the truck before the collision.  They each also stated that while Alfonso's truck had the usual "running lights" on prior to the accident, the truck's flashing hazard lights were not activated.  Trooper G.R. Austin of the Virginia State Police, who arrived at the accident scene about five minutes after the

2

collision, testified that the truck's hazard lights had not been activated at the time he arrived.

Both Robinson and Andrus stated that they had seen the truck from about a quarter-mile or a half-mile away, but that they thought the truck was moving. Robinson testified that she did not realize the truck was stopped until she was "on top of it." She explained that she tried to avoid the collision by applying her brakes and swerving to the left, but that she was unable to get around the truck.

Andrus testified that she did not realize the truck was stopped until the Robinson van collided with it. After the accident, Andrus stopped to assist the occupants of Robinson's van. She observed Alfonso return from the rest area about 10 to 15 minutes after the accident.

Alfonso testified that when the disabled truck came to a stop, he unsuccessfully tried to send a message to his employer on the truck's computer that the truck needed to be towed from the highway. Alfonso then left the truck and ran about 100 yards to the rest area to use a telephone to call for assistance. Although he had reflective triangles in his cab, Alfonso did not place them behind the truck. He testified that he thought he could run to the rest area, summon help, and return to the truck within ten minutes to set out the triangles.

Alfonso stated that he had activated the truck's flashing hazard lights before the truck stalled, because traffic in the area had temporarily stopped due to road construction. He testified that the truck's "flashers" were still on when he left the truck to run to the rest area. As he was returning from the rest area after placing the telephone call, Alfonso heard Robinson's van collide with his truck. Alfonso estimated that he had been away from the truck for three to five minutes.

On cross-examination, Alfonso testified that he had attended eight weeks of training classes in 1990 in order to work as an interstate truck driver, and that he received further training from his employer later that year. Alfonso stated that he learned from his training classes that the deployment of warning flares or reflective triangles was "the first thing you should do" after securing a truck that had become disabled. He knew that the purpose of the safety triangles was "to warn people who are coming up from behind and let them know that you're stopped." He also stated that he was aware that federal regulations governing interstate trucking require drivers to place flares or reflective triangles at specified distances behind a disabled truck "as soon as possible, but in any event within ten minutes."

Both at the end of the plaintiff's case and at the conclusion of all the evidence, Schneider moved to strike

Robinson's evidence on Count II, arguing that Alfonso's conduct did not rise to the level of willful and wanton negligence. The trial court denied both motions to strike the evidence and submitted the case to the jury on the issues of proximate causation, willful and wanton negligence, and contributory negligence.

A special verdict form[1] returned by the jury contained three findings: 1) that Alfonso's negligence was a proximate cause of the accident; 2) that Alfonso's negligence was willful and wanton; and 3) that Robinson was not guilty of contributory negligence. The jury awarded damages in favor of Robinson in the amount of $550,000, plus interest from the date of the accident. On the defendants' motion, the court reduced the award of damages to $450,000, the amount requested in the amended motion for judgment. The court denied Alfonso's motion to set aside the verdict and entered final judgment in favor of Robinson in that amount, plus interest. This appeal followed.

Schneider argues that the trial court erred in submitting the issue of willful and wanton negligence to the jury. He contends that Alfonso's violation of a "motor vehicle safety statute" did not constitute willful and wanton negligence, and

---

[1]Although the use of a special verdict form is not at issue in this appeal, we note that this Court has not sanctioned the use of special verdicts in negligence actions. See Johnson v. Smith, 241 Va. 396, 401, 403 S.E.2d 685, 688 (1991).

5

that his conduct was not egregious and did not manifest a complete disregard for the safety of others. Schneider asserts that Alfonso's actions in trying to contact his employer by computer, and in running to the nearby rest area to obtain assistance by telephone, demonstrate that Alfonso attempted to remove the truck from the highway as soon as possible out of concern for the safety of others.

In response, Robinson argues that the evidence concerning Alfonso's conduct presented a factual question of willful and wanton negligence that was properly submitted to the jury. Robinson contends that the evidence supported a conclusion that Alfonso acted with conscious disregard for the rights of other drivers on the highway, or with reckless indifference to the knowledge that his conduct probably would cause injury to another driver. We agree with Robinson's argument.

Willful and wanton negligence is action taken in conscious disregard of another's rights, or with reckless indifference to consequences that the defendant is aware, from his knowledge of existing circumstances and conditions, would probably result from his conduct and cause injury to another. Harris v. Harman, 253 Va. 336, 340-41, 486 S.E.2d 99, 101 (1997); Clohessy v. Weiler, 250 Va. 249, 252, 462 S.E.2d 94, 96 (1995); Griffin v. Shively, 227 Va. 317, 321-22, 315 S.E.2d 210, 213 (1984). Each case raising an issue of willful and wanton negligence must be

6

evaluated on its own facts, and a defendant's entire conduct must be considered in determining whether his actions or omissions present such a question for a jury's determination. Clohessy, 250 Va. at 253, 462 S.E.2d at 97; Huffman v. Love, 245 Va. 311, 315-16, 427 S.E.2d 357, 360-61 (1993).

Willful and wanton negligence, unlike gross or ordinary negligence, requires an actual or constructive consciousness that injury will result from the act done or omitted. Infant C. v. Boy Scouts of America, Inc., 239 Va. 572, 580-81, 391 S.E.2d 322, 327 (1990); see Wolfe v. Baube, 241 Va. 462, 465, 403 S.E.2d 338, 339-40 (1991); Boward v. Leftwich, 197 Va. 227, 231, 89 S.E.2d 32, 35 (1955). However, ill will is not a necessary element of willful and wanton negligence. Infant C., 239 Va. at 581, 391 S.E.2d at 327; Baker v. Marcus, 201 Va. 905, 909, 114 S.E.2d 617, 621 (1960).

Schneider is correct in its contention that the intentional violation of a traffic law, without more, will not support a finding of willful and wanton negligence. See Harris, 253 Va. at 341, 486 S.E.2d at 102; Baker, 201 Va. at 910, 114 S.E.2d at 621-22. We disagree, however, with Schneider's further assertion that our prior decisions require a conclusion that Alfonso was not guilty of willful and wanton negligence as a matter of law.

7

Schneider's argument relies primarily on our holdings in Harris and Clohessy.[2]  In Harris and Clohessy, we concluded as a matter of law that the defendant's conduct did not rise to the level of willful and wanton negligence.  In Harris, the evidence showed that the defendant "tailgated" the plaintiff's vehicle while travelling at a speed between 10 and 30 miles per hour in excess of "the 30 m.p.h. speed which was safe for that stretch of road."  253 Va. at 338, 486 S.E.2d at 100.  In Clohessy, the record demonstrated that the defendant's vehicle hit a pedestrian walking in the street as the defendant was driving at night without headlights and with a fogged windshield while operating her vehicle about ten miles in excess of the speed limit.  250 Va. at 251, 462 S.E.2d at 96.

The defendants' conduct in Harris and Clohessy was not as egregious as Alfonso's conduct.  A critical characteristic distinguishing the present case from those two cases is that Alfonso was a professional driver who had received specialized safety training warning against the very omissions he made prior

---

[2]Schneider also relies on our holding in Harris Motor Lines v. Green, 184 Va. 984, 37 S.E.2d 4 (1946).  This reliance is misplaced, however, because we did not decide an issue of willful and wanton negligence in Green.  There, the issue presented was whether the trial court erred in instructing the jury on the doctrine of last clear chance.  Id. at 989, 37 S.E.2d at 5.  We concluded that both drivers "were guilty of such negligence as efficiently contributed to the accident and which continued down to the time of the accident" and, thus,

8

to the accident. As stated above, Alfonso admitted at trial that he was instructed that the deployment of safety flares and reflective triangles was the first act that should be taken after securing a disabled truck. He knew that the purpose of such safety devices was to warn motorists that they were approaching a stopped vehicle. Despite this training and knowledge, Alfonso consciously elected to leave the disabled truck in a travel lane of an interstate highway without placing any warning devices behind it.

Such evidence that a defendant had prior knowledge or notice that his actions or omissions would likely cause injury to others is a significant factor in considering issues of willful and wanton negligence. See e.g., Huffman v. Love, 245 Va. at 315, 427 S.E.2d at 360; Booth v. Robertson, 236 Va. 269, 270, 272-73, 374 S.E.2d 1, 2-3 (1988). In the present case, Alfonso's prior knowledge was a conceded fact that related directly to the specific circumstances with which he was confronted on the night of the accident.

Alfonso's knowledge and omissions were factors to be considered in the context of the other evidence in the case. The evidence stated above showed that the disabled truck remained entirely on the traveled portion of the highway, and

---

that the doctrine of last clear chance was inapplicable. Id. at 990-91, 37 S.E.2d at 6.

that Alfonso left the truck unattended in nighttime traffic in a "very dark" area where there were no light fixtures and the speed limit was 55 miles per hour.  Also, viewing the evidence in the light most favorable to the plaintiff, Alfonso did not activate his hazard lights before leaving the vehicle unattended, and he did not return to the truck until 10 to 15 minutes after leaving it on the highway.

We conclude that the cumulative evidence of Alfonso's knowledge and conduct raised a question of willful and wanton negligence for the jury's determination.  Thus, the trial court did not err in instructing the jury on this issue.

For these reasons, we will affirm the trial court's judgment.

Affirmed.